■ JEANNE CINQUEMANI, Appellant, v. GUILIANO CINQUEMANI, Respondent.— In an action for divorce founded upon cruel and inhuman treatment, plaintiff appeals from an order-judgment of the Supreme Court, Nassau County, dated January 16, 1973, which (1) dismissed her complaint at the conclusion of plaintiff's proof; (2) denied her a divorce; (3) denied her request for additional counsel fees and (4) directed her to return to defendant the sum of $6,898.81, wrongfully converted by her from two savings certificates in joint names and further directed her to personally pay interest thereon from the time of wrongful conversion. Order-judgment modified, on the law

and the facts and in the interest of justice by striking therefrom the first, second and third decretal paragraphs, which dismissed plaintiff's complaint, denied her relief for divorce and denied additional counsel fees; substituting therefor a decretal paragraph as follows: "Ordered, Adjudged and Decreed that the plaintiff, Jeanne Cinquemani, is granted Judgment of Divorce against defendant, Guiliano Cinquemani"; and remitting the matter to the Special Term, Part V, for further determination on the issues of alimony, custody of and support for the minor issue of the parties and additional counsel fees. As so modified, order-judgment affirmed, without costs. In our opinion, the evidence adduced at the trial herein competently established a course of conduct by defendant directed against plaintiff, which endangered her physical and mental well-being and rendered it unsafe and improper for plaintiff to cohabit with defendant (Domestic Relations Law, § 170, subd. [1]). The situation in the case at bar presents more than mere incompatability (*Middleton* v. *Middleton,* 35 A D 2d 371) or occasional marital discord (*Rios* v. *Rios,* 34 A D 2d 325, affd. 29 N Y 2d 840). It evidences facts which clearly point to matrimonial demise (*Berlin* v. *Berlin,* 64 Misc 2d 352, mod. on other grounds 36 A D 2d 763, mot. for lv. to app. dsmd. 28 N Y 2d 986). There was evidence that defendant struck plaintiff on several occasions, causing her personal injury. As a result of his actions towards her, plaintiff has been under a doctor's care for hypertension. She suffers from headaches, blackouts, dizzy spells and palpitation and has been taking tranquilizers. In addition, there is uncontradicted proof of false accusations of infidelity made by defendant to plaintiff, without a showing of reasonable grounds for belief in the accusation. Such statements constitute cruel and inhuman treatment sufficient to warrant the granting of a divorce (*Mante* v. *Mante,* 34 A D 2d 134, 136–137; *Lowe* v. *Lowe,* 67 Misc 2d 271, 273, affd. 37 A D 2d 525). Plaintiff established a prima facie case for divorce founded upon cruel and inhuman treatment. Under such circumstances, and in the absence of an affirmative defense of adultery, relief should have been granted to her (*Woicik* v. *Woicik,* 66 Misc 2d 357). The other contention of plaintiff is that the trial court erred in directing her to turn over to defendant the entire proceeds of the savings certificates, which she cashed in and placed in trust for the two minor children of the parties. We do not believe this determination to have been erroneous. The uncontradicted evidence of the parties reveals that the funds for the certificates came from defendant's pension plan; plaintiff did not contribute any money towards their purchase; defendant placed the certificates in joint names for convenience and emergency purposes and he did not authorize plaintiff to cash them in. Subdivision (b) of section 675 of the Banking Law creates a rebuttable presumption when a joint account is created that the funds therein belong to those in whose names the account was made. This holds true even when withdrawals are made prior to the death of one of the depositors (*Matter of Krimer,* 13 N Y 2d 22, 27). Accordingly, where, as in the case at bar, the joint account was created as a matter of convenience and not with the intention of conferring a beneficial interest upon plaintiff, the presumption was effectively rebutted (*Silbert* v. *Silbert,* 22 A D 2d 893, affd. 16 N Y 2d 564; *Herwick* v. *Stiehl,* 68 Misc 2d 850). Accordingly, the case is remitted to the Special Term for proceedings not inconsistent with this opinion. Hopkins, Acting P. J., Latham, Christ and Benjamin, JJ., concur; Munder, J., dissents and votes to affirm the order-judgment in its entirety, with the following memorandum: The law is clear that in order to procure a judgment of divorce on the ground of cruel and inhuman treatment, the plaintiff must establish a *pattern* of actual physical violence or if actual violence is not involved, the

conduct must be such as *seriously* affects the plaintiff's health and threatens to impair it and renders it unsafe to cohabit (see *Rios* v. *Rios*, 34 A D 2d 325, affd. 29 N Y 2d 840). The plaintiff in this case failed to do so. The parties were married in 1954. Plaintiff testified that in 1968 defendant swung at her as they were leaving a party in Maryland, but her brother-in-law interceded and prevented the blow from striking her. The brother-in-law specifically denied that defendant ever swung at plaintiff on the occasion she described, and defendant also denied it. Plaintiff testified that in May, 1969 defendant struck her while they were both driving home from a wedding with her parents. Defendant admitted he was drunk on that occasion and "might have" struck plaintiff. Plaintiff's parents confirmed her version. Plaintiff also testified that defendant struck her in their home in August, 1971. Defendant admitted swinging at her with the back of his hand and giving her a "glancing blow", but stated it was after she had been cool to his request for sexual relations and threatened to use knife on him if he ever touched her again and threw water in his face. In my judgment, these later two incidents, in 1969 and 1971, over the course of a 19-year marriage do not establish a pattern of actual physical violence. I note that the couple's 18-year-old daughter who lived with them testified she never saw any violence between her parents. Also, I cannot agree with the majority's conclusion that defendant made false accusations of infidelity without reasonable grounds for belief and that said accusations constituted cruel and inhuman treatment. For one thing, plaintiff testified that one such accusation occurred in the presence of her brother-in-law, but the brother-in-law and defendant specifically denied that the accusation was made. Second, the testimony of this case shows that any claims of infidelity made by defendant were not accusatory but rather the defense mechanism of a frustrated and somewhat jealous husband, or so the trier of the facts could hold. As my colleague, Mr. Justice Hopkins, said in *Mante* v. *Mante* (34 A D 2d 134, 138): "the credibility of the testimony at the trial was primarily a function of the Trial Term, with whose judgment we are not disposed to interfere". In conclusion, I would repeat what was stated in *Middleton* v. *Middleton* (35 A D 2d 371, 373): "Now, we realize the cult of the 'dead marriage' has taken hold of current thinking and the seeming indissolubility of marriage, save for adultery, has had its day as a doctrine and has ceased to be. But we are not prepared to say mere incompatibility alone is ground for a divorce."